FILED IN CHAMBERS
U.S.D.C. Rome

SEP 05 2006

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

UNITED STATES OF AMERICA

    v.

RODNEY ALLEN SMITH, RICKY
LAMAR WADE, and BARBARA SUE
CULBERSON,

        Defendants.

CRIMINAL ACTION
NO. 4:97-CR-35

O R D E R

The defendants filed separate motions to vacate their sentence pursuant to 28 U.S.C. § 2255 [Doc. Nos. 214, 216, 218, and 220].[1] The government filed a consolidated response to the defendants' motions on February 27, 2004, [Doc. No. 228], and on May 21, 2004, the defendants filed their consolidated reply [Doc. No. 239]. Because the defendants' motions to vacate are identical in all relevant respects, this court will address each of the alleged errors collectively in this order.  Also pending before the court are the defendants' motions for leave to engage in discovery [Doc. Nos. 222, 223, and 226], Barbara Sue Culberson's motions for leave to adopt the motions, legal memoranda, and affidavits filed by Ricky L. Wade and Rodney Smith [Doc. Nos.  234 and 245]; Smith and Wade's motion for a 10-day extension to file their reply to the government's answer and motion to dismiss their section 2255 motions [Doc. No.  235]; and the defendants' motion for a

_____

[1]  This court has also considered the amendments in support of Smith and Wade's motions to vacate [Doc. Nos. 224 and 225].

continuance pursuant to Rule 56(f), Federal Rules of Civil Procedure [Doc. No. 237]; the defendants' motion to exceed the page limitations imposed by the local rules of this court [Doc. No. 238].[2]

Culberson's motions for leave to adopt the material submitted by her codefendants are GRANTED; the defendants' motion to exceed the page limitations imposed by this court's local rules is GRANTED; Smith and Wade's motion for a 10-day extension is GRANTED. The court has carefully considered the defendants' request for discovery and to continue the matter pending such discovery; however, the court finds the record before the court is sufficient to rule on the defendants' section 2255 motions. Consequently, the motions for leave to engage in discovery and to continue the matter are DENIED.

## I.   RELEVANT FACTS AND PROCEDURAL HISTORY

Rodney Allen Smith, Ricky Lamar Wade, and Barbara Sue Culberson were indicted by a federal grand jury in a multi-count

---

[2] On February 22, 2005, the defendants filed a supplemental memorandum [Doc. No. 244] in which they refer to a purported July 2004 motion for leave to amend their section 2255 motions. The court has no record of any July 2004 filing with regard to amending the section 2255 motions. However, it appears that the purported motion and the supplemental brief seek relief based on the Supreme Court decision in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531 (2004). *Blakely* was soon followed by United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005). However, the Supreme Court has not declared *Booker* to be retroactive and applicable to cases on collateral review. *See* In re Anderson, 396 F.3d 1336 (11th Cir. 2005). Therefore, to the extent that the defendants seek to amend their section 2255 motions to add a claim for relief under *Blakely* or *Booker*, the court would deny the motion.

indictment on August 19, 1997.  Subsequently, on December 18, 1997, the grand jury returned a superseding indictment against the same defendants charging all of them with:

(1) Count One - conspiring to manufacture methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846;

(2) Count Two - attempting to manufacture methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2 (aiding and abetting);

(3) Count Three - attempting to possess with intent to distribute methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C § 846 and 18 U.S.C. § 2;

(4) Count Four - possession of listed chemicals with intent to manufacture a controlled substance, in violation of 21 U.S.C. § 841(d)(1) and 18 U.S.C. § 2;

(5) Count Five - possession of a three-neck round bottom flask, knowing, intending, and having reasonable cause to believe that it would be used to manufacture a controlled substance, in violation of 21 U.S.C. § 843 (a)(6) and 18 U.S.C. § 2.

In addition, Smith was also charged with the following offenses:

(1) Counts Six through Fourteen - possession of various listed chemicals with intent to manufacture a controlled substance, in violation of 21 U.S.C. § 841(d)(1); and

(2) Counts Fifteen through Twenty-Nine - using a communication facility (telephone) on various dates in committing and

3

facilitating the manufacture of methamphetamine, in violation of 21 U.S.C. § 843(b).

All of the defendants pled not guilty to each of the charges against them, and the case proceeded to a trial by jury on February 17, 1998. The charges centered around the defendants' ordering various chemicals used in the manufacture of methamphetamine from Fisher Scientific Atlanta, picking up the chemicals from Dickey Seed Company, where they had been delivered, and transporting these chemicals to 5440 Calhoun Road, Adairsville, Georgia, Ms. Culberson's residence. Ultimately, a search warrant was obtained and executed at this residence on July 24, 1997, at which time the chemicals and equipment used to manufacture methamphetamine were discovered, and all three of the defendants were arrested. Aside from the chemicals ordered from Fisher Scientific Atlanta, other chemicals, glassware, supplies, firearms, and a handwritten note specifying a formula for manufacturing methamphetamine and amphetamine, were found in Ms Culberson's residence, which Mr. Wade shared.

A portion of the defendants' defense centered on the fact that they had entered into a contract with Smith's parents, who owned an apothecary in Florida, to manufacture perfume and facial cream. A contract, dated June 15, 1997, between Smith's mother, Smith, and Culberson, indicated that Smith and Culberson would be paid $10,000 per month to manufacture P.L.S. Skin Cream. Evidence discounting the efficacy of this contract was also introduced at trial.

4

During the trial, the court directed a verdict for Smith on Counts Six through Fourteen of the superseding indictment because it lacked venue with respect to those counts.   On February 27, 1998, the jury returned verdicts of guilty against all of the defendants on Counts One through Five.   In addition, Smith was found guilty on Counts Fifteen, Sixteen, Eighteen through Twenty-One, Twenty-Three, Twenty-Four, and Twenty-Six through Twenty-Nine. Smith was found not guilty of Counts Seventeen, Twenty-Two, and Twenty-Five.   On May 17, 1999, each of the defendants was sentenced to 360 months imprisonment, given five years of supervised release, and a special assessment.[3]

Thereafter, the defendants filed a timely appeal, and on January 30, 2001, the United States Court of Appeals for the Eleventh Circuit affirmed the defendants' convictions and sentences.   United States v. Smith, 240 F.3d 927 (11th Cir. 2001). The defendants then moved for a rehearing and rehearing en banc, which was summarily denied on June 21, 2002.   United States v. Smith, 45 Fed.Appx.   881 (11th Cir. 2002).   Furthermore, their petition for a writ of certiorari was denied on November 4, 2002. Smith v. United States, 537 U.S. 1011, 123 S.Ct. 479 (2002).

---

[3]   Smith was sentenced to 360 months on each of Counts One, Two, and Three, 240 months on Count Four, 120 months on Count Five, and 48 months on each of his remaining counts, all to run concurrently, as well as a $1,700 special assessment.   Wade and Culberson were sentenced to 360 months on each of Counts One, Two, and Three, 240 months on Count Four, and 120 months on Count Five, all to run concurrent with each other, as well as a $500.00 special assessment.

Culberson filed her motion to vacate and accompanying addendum on October 24, 2003; Smith and Wade filed their motions to vacate and accompanying addendums on October 29, 2003.[4]  On February 5, 2004, the defendants filed addendums to their motions.  After evaluating the defendants' motions, this court directed the government to respond to the defendants' motions and the government filed its consolidated response on February 27, 2004.  Thereafter, the defendants filed their consolidated reply on May 13, 2004.

## II.   LEGAL DISCUSSION

The defendants' proffered grounds of error can be broken down into two general categories: (1) those based on ineffective assistance of counsel, and (2) non-constitutional claims that were not previously raised on direct appeal.  This court will address each of these categories separately.

### A.   INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Grounds One through Eight of the defendants' section 2255 motions center around the defendants' contention that their Sixth Amendment rights to effective assistance of counsel were violated. Any analysis of ineffective assistance of counsel claims begins with Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). "The benchmark for judging any claim of ineffectiveness must be

---

[4]   Culberson's motion was filed by the clerk on October 29, 2003; Wade and Smith's motions were filed by the clerk on October 31,2003.  However, an incarcerated defendant's pro se motion is deemed filed on the date the defendant signs his motion. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001).

whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064.   To succeed in establishing an ineffective assistance of counsel claim, the defendants must establish both that their counsel's performances were deficient and that these deficient performances prejudiced their defense.   466 U.S. at 687, 104 S.Ct. at 2064.   Stated another way, the defendants must prove by a preponderance of the evidence that their counsel were incompetent and that this incompetence prejudiced them by showing both that:   (1) their "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688, 694, 104 S.Ct. at 2065, 2068.

The purpose of analyzing the reasonableness of counsel's representation pursuant to *Strickland*'s first prong is not to grade counsel's skill; rather, it is to determine whether the counsel's performance was constitutionally acceptable.   "The test has nothing to do with what the best lawyers would have done.   Nor is the test even what most good lawyers would have done.   We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial."   Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995).   If the defendants are unable to prove that no reasonable lawyer would have acted as their

lawyers did at trial, this court need not address whether the defendants were prejudiced by their lawyers' actions. In assessing a lawyer's decision-making, this court must also give deference to that lawyer's experience. *Chandler*, 218 F.3d at 1316.

Moreover, there is a presumption that counsel's actions were reasonable. The Supreme Court has counseled courts to be "highly deferential" when assessing whether counsel provided reasonably effective assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Deference to counsel, the court explains,

> requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164 (1955)). "And because counsel's conduct is presumed reasonable, for [the defendants] to show that the conduct was unreasonable, [the defendants] must establish that no competent counsel would have taken the action that [their] counsel [took]." *Chandler*, 218 F.3d at 1315. The Eleventh Circuit has noted that with this presumption, the defendants' burden of persuasion is a heavy one. *Id.* at 1314.

If unreasonableness is proven, however, the court then turns its attention to the prejudice prong of the *Strickland* test. This

prong incorporates the oft-utilized "but for" test.  The defendants must prove that there is a reasonable probability that "but for" their counsel's unreasonable actions or inactions, they would have been found not guilty because of a reasonable doubt concerning their guilt.  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  When making this determination, the court must also presume that the judge or jury acted according to law.  *Id.*  When determining prejudice with respect to an ineffective assistance of counsel claim, this court must consider the totality of the evidence before the jury or judge.  466 U.S. at 695, 104 S.Ct. at 2069.

The standard for ineffective assistance of appellate counsel is the same as that for trial counsel.  However, when assessing an appellate counsel's performance, this court looks to the nature of the appellate process.  Jones v. Barnes, 463 U.S. 745, 751-52, 103 S.Ct. 3308, 3313 (1983).  Notably, appellate counsel need not raise every conceivable, non-frivolous ground for appeal when he believes that doing so would undermine the potential impact of the claims with the greatest likelihood of success.  *Id.*; *Smith v. Robbins*, 528 U.S. 259, 120 S.Ct. 746 (2000).  Thus, appellate counsel is free to make a tactical decision not to raise issues he believes are without merit on appeal, and such tactical decision does render his assistance constitutionally ineffective.  Lambrix v. Singletary, 72 F.3d 1500, 1506-07 (11th Cir. 1996).

Furthermore, when evaluating the prejudice prong of the *Strickland* test in the appellate context, this court must analyze whether the issues not raised on appeal would have been successful if they had been raised on appeal. Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990). If this court determines that the issues not raised on appeal would not have been successful if they had been raised on appeal, the defendants have suffered no prejudice. Stated differently, a defendant's counsel's failure to raise non-meritorious claims on appeal does not constitute constitutionally ineffective assistance. However, a failure to raise meritorious claims on appeal does constitute ineffective assistance of counsel. With this standard in mind, this court will now address whether the defendants have met their burden of establishing that their counsel's representation fell below an objective standard of reasonableness and whether this unreasonable representation prejudiced the defendants.

### 1.   Ground One

The defendants first allege "[i]neffective assistance of appellate counsel for failing to raise a significant and substantive claim on direct appeal relating to allegations of jury tampering." After the trial, but shortly before the defendants were to be sentenced, the court received a letter on May 18, 1998, which purportedly was from an anonymous juror who participated in the defendants' trial. The letter alleged that government lawyer, Sandra Strippoli, had paid the anonymous juror to return a guilty

verdict.   The court immediately notified the parties that it had received this letter, gave them copies of the letter, and made the original part of the record.   In addition, the court ordered an FBI investigation of this matter and postponed the defendants' sentencing pending the results of this investigation.   Agent Christopher Beanland was then charged with investigating the matter.

During the investigation, Ms. Strippoli received an anonymous telephone call from an unidentified male caller claiming to have been a juror.   The caller stated that he had heard other jurors were paid off and he wanted to know where his money was as well. Ms. Strippoli immediately hung up on the caller and informed the FBI and her superior about the substance of this call.   Thereafter, the FBI was able to retrieve the number from which the call was made and traced this number back to a law enforcement agency in Floyd County, Georgia.   From there it was determined that Investigator David Reeps of the Rome/Floyd County Metro Drug Task Force had made the call to Ms. Stroppoli as a joke and thought that Ms. Stroppoli knew he was the one making the call.   Investigator Reeps then apologized to Ms. Strippoli for his conduct, and Agent Beanland continued his investigation concerning the letter.[5]

---

[5] Since it has been determined that Investigator Reeps made this phone call to Ms. Strippoli without having any interaction with the jury, this court deems Investigator Reeps conduct irrelevant for the purposes of determining whether the defendants' appellant counsel acted improperly in failing to challenge the district judge's refusal of defendants' counsel's request to individually question the jury.

On September 23, 1998, the trial court held a hearing on the matter. At that time, the court was notified that the forensic analysis of the anonymous letter revealed no latent fingerprints on the letter or on the envelope; additionlly, there was nothing distinctive about the machine or typewriter used to generate the letter which would aid in identifying the source of the letter. Furthermore, Ms. Strippoli took the witness stand and testified that she did not bribe any of the jurors, nor had she made any improper contact with any of the jurors. The defendants' counsel were unable to present any independent facts or evidence in support of the allegations made in the anonymous letter, but they did request the opportunity to conduct a further investigation by interviewing the jurors.

The trial court denied the defendants' motion to interview the jurors because of the anonymity of the letter and because of Ms. Stroppoli's testimony under oath that she had not attempted to bribe any of the jurors. The trial court subsequently ruled that there was no credible evidence to warrant any further investigation and memorialized this oral ruling in an order dated September 25, 1998, which contained the court's legal analysis of the issue.

The defendants contend that they were repeatedly told by their trial counsel, who continued as their joint appellate counsel, that the trial judge had abused his discretion in refusing to allow them to individually question the jurors about this letter. Furthermore, the defendants contend that their attorneys repeatedly

assured them that this issue would be raised on appeal.  In fact, Kevin Brehm, appellate counsel for Smith assigned this issue as an error and adopted the argument of Wade, who was supposedly chosen to brief this issue on behalf of all the defendants.

The government centers its argument on the prejudice prong of the *Strickland* test, namely that raising the issue on appeal would not have resulted in a reversal of the district court's ruling. Specifically, the government contends that due to the anonymous nature of the letter, its temporal proximity to the defendants' sentencing, and the lack of any extrinsic evidence corroborating the contention that the prosecutor paid the jurors for a guilty verdict, there is no indication that an appellate court would hold that the trial judge had abused his discretion in failing to interview each of the jurors.  The government cites a number of cases in support of this contention.[6]

In the Eleventh Circuit, "the defendant bears the burden of establishing that an extrinsic contact with a jury in fact occurred."  United States v. Caporale, 806 F.2d 1487, 1503 (11th Cir. 1986).  If a defendant is successful in establishing an extrinsic contact occurred, "the burden then shifts to the government to demonstrate that the contact was not prejudicial." *Id.*  The Eleventh Circuit has noted that because the district court

---

[6]   United States v. Caldwell, 776 F.2d 989 (11th Cir. 1985); United States v. Hernandez, 921 F.2d 1569, 1577 (11th Cir. 1991); United States v. Clifton, 210 F.3d 362 (4th Cir. 2000); United States v. Abbell, 271 F.3d 1286 (11th Cir. 2001); United States v. Sylvester, 143 F.3d 923, 932 (5th Cir. 1998).

is in the best position to evaluate the circumstances surrounding jury tampering it is "the extent of a district court's inquiry into alleged extrinsic contacts with the jury is committed to the court's sound discretion."   *Id.; see also* United States v. Caldwell, 776 F.2d 989, 997 (11th Cir. 1985).   It is important to note, however, that "[t]he [district court's] duty to investigate [allegations of jury tampering] arises only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality."   United States v. Barshov, 733 F.2d 843, 851 (11th Cir. 1984).   Without a sufficient showing of extrinsic influence, therefore, the district court has no obligation to conduct an investigation.   *Id.*

While there is no list of exhaustive factors a district court should consider when determining whether a defendant has met his burden of establishing that an extrinsic influence has occurred, it is clear that "there must be more than mere speculation" that tampering occurred.   *Id.*  An anonymous allegation of jury tampering is too speculative to meet the defendant's burden of proving extrinsic influence.   *Caldwell*, 776 F.2d at 999; *see also* United States v. Brantley, 733 F.2d 1429, 1439-40 (11th Cir. 1984) (noting that the anonymity of the source alleging jury tampering casts doubt on the validity of the allegation when determining whether the defendants met their burden of proving extrinsic influence).

After receiving the anonymous letter, the trial judge immediately canceled the defendants' sentencing and ordered an FBI

investigation.  Ultimately, the court conducted a hearing at which the defendants' counsel were unable to produce any independent information verifying the allegations contained in the anonymous letter.  At the hearing, Ms. Strippoli also testified under oath that she did not bribe or attempt to influence any juror in this case.  In light of Ms. Strippoli's testimony and the inability of the defendants to produce any testimony verifying the serious allegations contained in the anonymous letter,[7] the court held that it was "convinced that no tampering occurred in this case and thus need not even consider whether the jury was prejudiced."  September 25, 1998, Order, p. 5.  The district court's determination that the defendants had failed to meet their burden of establishing extrinsic influence and, thus, no further investigation was required, is in accord with Eleventh Circuit precedent.

Thus, due to the anonymous nature of jury tampering allegation, the testimony from Ms. Strippoli refuting these allegations, coupled with the defendants' inability to corroborate these serious, yet anonymous, jury tampering allegations made on the eve of their sentencing, this court concludes that the defendants were not prejudiced by their appellate counsel's failure to raise this issue on appeal because the defendants' contention that they were entitled to a further investigation concerning jury tampering would have been unsuccessful had it been raised on the

---

[7]   This court also notes that the district court found the anonymous letter "highly suspicious"" in light of the defendants' impending sentencing.  September 25, 1998, Order, p. 5.

appellate level.  As such, the defendants' appellate counsel did not act ineffectively by failing to raise this issue.

　　2.  Ground Two

In Ground Two of their addendum, the defendants contend their trial counsel provided ineffective assistance of counsel by: "i) fail[ing] to call witnesses with relevant testimony at the hearing on jury tampering; ii) fail[ing] to move to disqualify the United States Attorney for the Northern District of Georgia based on a conflict of interest on the jury tampering issue; and iii) fail[ing] to seek <u>Jencks</u> and <u>Brady</u> material in connection with the FBI and federal grand jury investigation into jury tampering."

With respect to their counsel's failure to call witnesses at the hearing on jury tampering, the defendants contend that their counsel acted ineffectively in failing to call Investigator David Reeps and Agent David Gray, who the defendants argue had information concerning jury tampering.  Specifically, the defendants contend that these individuals should have been called as witnesses because of Investigator Reeps's admitted involvement in telephoning Ms. Strippoli, an incident totally separate from the alleged anonymous juror's allegations of jury tampering.

First, this court notes that when evaluating the effectiveness of counsel's representation, it must analyze the totality of their representation and be careful not to second guess their decision-making.  Ward v. United States, 694 F.2d 654, 664 (11th Cir. 1983). After extensively reviewing the record in the case at bar, this

16

court finds that the defendants' trial counsel were actively involved in the case and made numerous sound decisions on behalf of their clients. With respect to counsel's decision not to call Investigator Reeps and Agent Gray in the jury tampering hearing, this court notes that Investigator Reeps's conduct is distinct from that of the allegedly anonymous juror whose letter was at issue in the hearing.

It is further important to note that the letter contended that Ms. Strippoli, rather than Investigator Reeps, paid jurors to return a guilty verdict. Thus, at the September 23, 1998, hearing, the court and the defendants' counsel correctly focused their attention on the origin of the anonymous letter. Neither Agent Gray nor Investigator Reeps was a juror. Furthermore, aside from triple hearsay contained in a portion of a letter the defendants produced with their motion for discovery from Bill Shiflett, Assistant Chief of Police, which explained his reasoning for not disciplining Investigator Reeps, the defendants have produced no evidence indicating that Investigator Reeps had any knowledge about the alleged jury tampering. In that letter, dated January 15, 2004, Assistant Chief Shiflett states,

> On December 6, 2004 [*sic*], I interviewed officer Reeps.
> He stated approximately one week after your trial, Jack
> Dickey came to his office and told him he understood
> there was a problem with the trial and that a U.S.
> Attorney paid some jurors for a guilty verdict.

Exhibit B, Defendants' Motion for Discovery.

17

First, the defendant did not receive this letter until January 15, 2004, over five years after the date the court had conducted its hearing on jury tampering.  As noted earlier, the Eleventh Circuit has directed district courts to avoid second-guessing counsel's decision-making through the clearer lens of hindsight. Therefore, this court is mindful of the fact that defendants' counsel was not privy to this information at the time the hearing occurred.

Second, there is no indication that Dickey himself had any first-hand knowledge about the alleged jury tampering. Specifically, Assistant Chief Shiflett's letter notes that Mr. Dickey told Investigator Reeps that he understood there was a problem at the trial with respect to jury tampering.  It is altogether conceivable that Mr. Dickey learned of this information after the FBI investigation had commenced or the hearing had been set.  Furthermore, this court gives little credence to Assistant Chief Shiflett's recollection of the time-frame in which Investigator Reeps purportedly spoke with Mr. Dickey as this conversation took place over five years before his letter was authored.  In short, this letter provides no evidence that Investigator Reeps or Agent Gary could have provided any relevant information in the court's September 23, 1998, hearing; therefore, the defendants' counsel's failure to call them as witnesses at that hearing did not constitute ineffective assistance of counsel.  This

court holds that no reasonable lawyer would have acted differently than the defendants' counsel.

This court next turns to the defendants' allegation that their counsel acted ineffectively by failing to object to the United States Attorney's Office for the Northern District of Georgia's representation of the government at the jury-tampering hearing. The defendants contend that an actual conflict existed because Investigator Reeps testified for the government at trial and Ms. Strippoli was a member of the United States Attorney's Office who was called to testify at the September 23, hearing. First, as the government notes, there is no indication that Investigator Reeps committed a federal crime by making the telephone call to Ms. Strippoli. Furthermore, Investigator Reeps was not a client of the United States Attorney's Office. Therefore, no conflict existed.

Second, when Ms. Strippoli testified as a witness at the September 23, 1998, hearing, Assistant United States Attorney William L. McKinnon represented the government at that hearing. As the Tenth Circuit noted in United States v. Bolden, 353 F.3d 870, 878 (10th Cir. 2003), the disqualification of the government's counsel is an extraordinary measure that must be used sparingly. Even under circumstances where it appears an actual conflict of interest exists, a government attorney has acted in bad faith, or may be called as a witness, courts have noted that the generally accepted practice is simply to disqualify the specific Assistant United States Attorney whose actions are at issue instead of the

19

entire United States Attorney's Office.  *Id.* at 879.  Since Ms. Strippoli testified at the September 23, 1998, hearing, the government was represented by another Assistant United States Attorney from the Northern District of Georgia.  There are no allegations of misconduct concerning this attorney; therefore, the defendants' counsel did not act ineffectively in failing to object to Mr. McKinnon's representation of the government at that hearing.

Finally, the defendants contend that their counsel acted ineffectively by failing to request *Jencks*[8] and *Brady*[9] material relative to the jury tampering investigation.  In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. at 87, 83 S.Ct. at 1196-97.  To establish a *Brady* violation, a defendant must prove the following:  "(1) that the government possessed evidence favorable to the defense, (2) that the defendant did not possess the evidence and could not obtain it with any reasonable diligence, (3) that the prosecution suppressed the evidence, and (4) that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense."  Spivey v. Head, 207 F.3d 1263, 1283 (11th Cir. 2000).

---

[8]  18 U.S.C § 3500 (2005).

[9]  Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963).

Here, the defendants again rely on the letter of Assistant Chief Shiflett for the proposition that the prosecution had evidence of jury tampering that was favorable to the defendants prior to the September 23, 1998, hearing.  First, this letter did not exist until January 15, 2004, over five years after the date of the jury tampering hearing; therefore, it could not have been produced at an earlier vantage point.  Second, the defendants have not produced any evidence that Agent Beanland or the prosecution had first-hand knowledge of Mr. Dickey's statement to Investigator Reeps, even if such a statement had actually been made.  Third, this court is somewhat leery of Assistant Chief Shiflett's recollection of Investigator Reeps's recollection of Mr. Dickey's hearsay statement as it was made over six years from the date of the hearing.  Thus, since the defendants are unable to establish that the government actually possessed evidence favorable to their defense, this court concludes that their counsel did not act ineffectively by failing to request *Brady* material relevant to the jury tampering hearing.

The same is true for the defendants' contention that their counsel acted ineffectively in failing to request Jencks Act material relevant to the hearing.  Presumably, the defendants contend their counsel acted ineffectively in failing to seek Agent Beanland's 302 report concerning the alleged jury tampering.  However, the Jencks Act applies only with respect to witnesses called on direct examination by the prosecution.  Agent Beanland

was not called as a witness by the prosecution at the September 23, 1998, hearing.   Rather, he testified about the results of the independent investigation he had conducted at the direction of the district court.   Notably, the district court directly questioned Agent Beanland about his investigation and allowed counsel for each defendant and the government to make further inquiries upon its completion.

Furthermore, at the hearing, Agent Beanland clarified that his investigation did not yield any information which would have assisted him in determining the author of the anonymous letter. Specifically, a forensic analysis of the letter yielded no identifiable fingerprints or other typographical abnormalities. Thus, because the investigation and hearing were ordered by the court, rather than the prosecution, the Jencks Act does not apply. Furthermore, even if Jencks did apply, there is no indication that Agent Beanland's 302 report would have been useful, since it only clarified that his investigation had failed to produce the author of the anonymous letter.

3.   Ground Three

In Ground Three of their addendum, the defendants allege that James Garner, attorney for Culberson, "had an actual conflict of interest in simultaneously representing Culberson and witnesses for the government.   Moreover, because Wade and Smith had a joint defense agreement with Culberson, the actual conflict of interest spilled over into the representation of them."   The defendants

22

contend that Garner, in addition to representing Culberson, also represented Jack Dickey and the corporate interests of Alfonso Lobo, both of whom the defendants say were government witnesses.

"A criminal defendant's right to effective assistance of counsel is violated where the defendant's attorney has an actual conflict of interest that affects the defendant adversely." United States v. Rodriguez, 982 F.2d 474, 477 (11th Cir.1993)   *See also* United States v. Novaton, 271 F.3d 968 (11th Cir. 2001).

Initially, the court notes that although Dickey was subpoenaed by the government, the government ultimately chose not to call him as a witness; instead, he was called as a witness for the defense, and he actually provided evidence that supported the defendants' claim that they planned to manufacture perfume and face cream. Dickey also testified at trial that his attorney was Doug Slade. Moreover, the defendants have not presented any evidence showing the extent, if any, that Garner had represented Lobo or any of his business interests.

The court further notes that Garner conducted a thorough and sifting cross-examination of Lobo, and the defendants have not have shown nor even suggested what Garner could or should have done differently in his representation of Culberson at this trial.

Just before she was scheduled to be sentenced, Culberson moved to disqualify Garner, but that motion was not based on any alleged conflict of interest relating to Dickey or Lobo. Instead, the motion was predicated on the fact that Garner had been going

23

through a divorce and that Culberson could not get along with his new wife, who also worked as Garner's secretary. The court conducted a hearing on Culberson's motion to disqualify, and at that hearing, Culberson testified as follows:

> I think as a person Mr. Garner is a fine man. I've always respected him and his profession, and he is a good friend to my eldest son, and I no way consider this a personal thing against him. However, I feel like – and maybe under ordinary circumstances, you know, that he – he did represent me well as a client in many ways. And but I feel like he has a lot on his plate, so to speak, you know, that was interfering with our communication and also, you know, in his life that probably caused him not to be able to represent me as, you know, like I think he should have, and I just want to say that for the record.
>
> . . . .
>
> It's not the communication I have with Mr. Garner. He has since married the lady that I described in that affidavit to you, and she has ordered me out of Mr. Garner's office twice, and she will not leave him messages and that sort of thing. And she has a certain amount of animosity toward me for some reason, and that's – I can communicate with Mr. Garner fine; I just don't communicate with Miss Garner. I mean this – Mrs. Garner.

Transcript of Proceedings, October 23, 1998, at 12-13.

This court concludes that the defendants have failed to show any actual or potential conflict of interest in Garner's representation of Culberson or how they were adversely affected by the alleged conflict. Thus, this ground is without merit.

4. Ground Four

In Ground Four of their addendum, the defendants allege, "Trial counsel rendered ineffective assistance by failing to conduct adequate pre-trial investigation and trial preparation as well as engaging in conduct outside the range of reasonably

24

competent counsel during the course of the trial itself." In this ground, the defendants list numerous complaints that they have with respect to how their counsel operated during trial. However, after a careful review of these alleged deficiencies, the court concludes that such actions neither individually nor collectively show that counsel were constitutionally ineffective.

The defendants allege that Garner hired a disbarred attorney, John Sawhill, to assist him in representing Culberson and that Sawhill engaged in several acts of misconduct, including "extorting additional fees, holding defense evidence hostage, and rendering legal advice to defendant Culberson." However, other than stating these conclusory allegations about Sawhill, the defendants present no evidence of misconduct on the part of Sawhill and certainly do not show how such alleged misconduct adversely affected their trial.

The defendants' generalized allegations about lack of pre-trial investigation and trial preparation are belied by the transcript of the trial itself. The docket and the trial transcript show, as the trial judge himself acknowledged on several occasions, that the attorneys had been thorough and had done good jobs of representing their clients throughout the trial. Counsel filed numerous pretrial motions with regard to evidence and suppression issues, discovery, and disclosure of a confidential informant. Evidence presented by defense counsel, together with their cross-examination of government witnesses, shows that they

were more than adequately prepared for the trial. Although defense counsel called numerous witnesses, the defendants suggest that there were additional witnesses who should have been called. However, these potential witnesses are not identified, nor do the defendants state what exculpatory evidence these witnesses would have presented.

The defendants argue that Garner failed to timely provide the government with the business contracts between Culberson, Smith, and the Florida apothecary which supposedly supported the defendants' theory of defense, viz., that the chemicals purchased were for the purpose of making a skin cream, and failed to introduce an audiotape of a recorded telephone conversation that would have rebutted the government's contention that the business contracts were fabricated.

Any failure to timely provide the business records was harmless, since the court allowed the records to be introduced at trial. As to the audiotape, the defendants have failed to show that the content of the tape would have rebutted the government's contention (and strong evidence presented by the government) that the contracts were fabricated.

The defendants further argue that their counsel were ineffective because they did not object to Ronald D. Hubbard's failure to preserve data from the analysis he performed, and because they did confront Hubbard as to his failure to preserve

evidence or to impeach Hubbard on this point.   However, these contentions find no basis in the record.

Hubbard was an expert in forensic drug identification who went into Smith's laboratory at Barbour Threads on July 18, 1997, the day that Smith's employment ended, and took custody of certain items in the lab.   He testified that he had performed an analysis on residue from the pitcher and condenser and found the type of methamphetamine (i.e., risemic) which results from the Phenyl-2-Propanol (P2P) method of manufacturing methamphetamine, as well as dibenzylketone, a by-product of that process.   Hubbard, who was familiar with the distinctive odor caused by the manufacturing of methamphetamine by the P2P method, testified that he recognized that distinctive odor in Smith's lab.

The defendants correctly state that Hubbard did not preserve the control data from his analysis, but they incorrectly argue that their counsel failed to attempt to impeach Hubbard on this point. Their attorneys specifically argued to have Hubbard's testimony excluded because of his failure to preserve his control data. Despite this argument, the trial judge ruled that his testimony was admissible.   In so ruling, the judge held that the failure to preserve the control data went to the credibility of Hubbard's testimony, not to its admissibility.   The record further shows that defense counsel thoroughly cross-examined Hubbard on this point. The fact that the jury chose to credit Hubbard's testimony does not mean that counsel were constitutionally ineffective.

The defendants also argue that Kevin Brehm, attorney for Smith, was ineffective by failing to provide a summary of Smith's proposed expert testimony to the government and by failing to call Smith as an expert witness. However, Smith's failure to testify was not the result of the court's excluding his expert testimony for failing to provide a report of his proposed testimony; instead Smith's failure to testify was the result of his own decision not to testify. The court informed the defendants of their constitutional right to testify, and they informed their court that they had decided not to testify. Smith was specifically asked if he wanted to talk to his attorney at more length about not testifying. Smith replied that he had already consulted "at length" and had decided not to testify. When the court asked Smith if he was satisfied with that decision, Smith replied, "I accept it." Thus, Smith's failure to testify was the product of his own decision, not any alleged misconduct on the part of Brehm.

The fact that defense counsel were unable to secure favorable verdicts does not mean that they were constitutionally ineffective.[10] As discussed above, the Constitution does not require errorless counsel, nor does it permit counsel's actions to be judged by hindsight. Instead, the court focuses on what was "reasonable given the circumstances counsel faced at the time."

---

[10] Indeed, the court dismissed counts six through fourteen against Wade based on his attorney's motion and argument.

Williams v. Head, 185 F.3d 1223, 1238 (11th Cir. 1999).  This ground is without merit.

    5.  Ground Five

    Ground Five alleges, "The trial judge failed to conduct a _de novo_ review of the magistrate judge's report and recommendation on defendants' motion to suppress.  Trial counsel rendered ineffective assistance in failing to object and/or raise this issue on appeal." This ground is based on the fact that the magistrate judge's report and recommendation dealing with a motion to suppress was filed on February 2, 1988, and that the trial court adopted the report and recommendation (with one modification) on February 13, even though objections were filed on February 10, February 11, and February 13. The defendants contend that such a quick adoption constituted a mere "rubber-stamp approval" of the report and recommendation, not the _de novo_ review required by 28 U.S.C. § 636(b)(1), when objections are filed.

    A district court's _de novo_ review of a magistrate judge's report and recommendation "entails only an independent review of the record."  In re Holywell Corp., 967 F.2d 568 (11th Cir. 1992). That is precisely what happened in this case.  The trial judge, in adopting the report and recommendation, stated that he had "reviewed the factual and legal conclusions contained in Magistrate Brill's Report and Recommendation, and, with one small exception, believes the conclusions are based on correct conclusions of law and correct findings of fact."  The fact that the trial judge

adopted the report and recommendation on the day that the last of three sets of objections were filed does not mean that he had not made a *de novo* review of the report and recommendation based on the prior objections (most of which were also presented in the last set of objections).

Even if the trial judge had failed to make a *de novo* review of the report and recommendation, such failure would have been harmless, since the Eleventh Circuit held that the trial court's ruling on the motion to suppress was correct. *Smith*, 240 F.3d at 930 n.8 (rejecting as "meritless" the defendants' arguments regarding the search warrant which had formed the basis of the motion to suppress). Therefore, counsel's failure to raise this issue at the trial level and on appeal does not constitute ineffective assistance of counsel.

6. Ground Six

In Ground Six the defendants contend that their counsel were ineffective in not arguing that the trial court had abused its discretion in admitting expert testimony without complying with the requirements set out in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993). Specifically, they argue that the trial court should not have admitted the testimony of Ron Hubbard.

The defendants cite several problems with Hubbard's testimony. He failed to keep any of the raw graph data from either his analysis of the substance or from previously conducted control

runs.  He did not write an important temperature on worksheets while conducting the analysis but, instead, included it several months later in a written report made less than a week before trial.  His laboratory was not certified by the federal government, nor was it accredited; in fact, the laboratories where Hubbard worked had recently failed state efforts at accreditation.

*Daubert* requires the district courts to act as "gatekeepers" with respect to expert testimony in order to assure that speculative or unreliable expert testimony does not reach the jury. In performing this role, this court looks to the qualifications of the expert witness, the methodology used by the expert witness, and whether the testimony will assist the trier of fact in understanding the technical or scientific evidence being presented. United States v. Hansen, 262 F.3d 1217 (11th Cir. 2003).  However, *Daubert* "is not intended to supplant the adversary system or the role of the jury."  Allison v. McGhan, 184 F.3d 1300, 1311 (11th Cir. 1999).

In the instant case, the trial court conducted a *Daubert* hearing and determined that the testimony of Hubbard was admissible.  The trial court stated, and this court agrees, that the defendants' objections go to the credibility of Hubbard's testimony, not to its admissibility.  As *Daubert* itself recognized, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

*Daubert,* 509 U.S. at 596, 113 S.Ct. at 2798. Here, defense counsel engaged in the vigorous cross-examination contemplated by *Daubert.* Again, the fact that the jury chose to credit Hubbard's testimony does not mean that counsel were constitutionally ineffective. Any attempt by appellate counsel to attack this ruling by the district court would have been fruitless, and he, therefore, had no constitutional obligation to raise such issue on appeal.

7.   Ground Seven

Ground Seven alleges, "Trial counsel rendered ineffective assistance by failing to object to evidence and jury instructions which constructively amended the indictment." The gravamen of the defendants' argument is that they were charged with respect to methamphetamine but that evidence was presented regarding amphetamine; additionally, Smith argues that the trial court used the disjunctive when charging the jury about committing or facilitating the commission of the offense whereas the indictment charged the conjunctive.

Although both Hubbard and the government's other expert, Ivette Vallejo, may have made passing reference to amphetamine in their testimonies, the record as a whole clearly shows their testimonies *in regard to the substance for which the defendants were being tried* was methamphetamine, not amphetamine.

For example, when questioned about the pitcher obtained from Smith's laboratory, Hubbard testified that he performed a basic chloroform extraction and subjected it to a mass spec. The result

of that test was  "I found the presence of dibenzylketone and what indicated methamphetamine." Trial Transcript, Vol. 3 at 290.  With respect to the test done on the condenser, Hubbard testified, "I found the retention times to be the - respectively for the un-derivatized and the derivatized to be correct for methamphetamine and methamphetamine T.P.C., on the T.P.C. for risemic methamphetamine T.P.C.  I found the - both mass spectra to be - match those of the methamphetamine and methamphetamine T.P.C. respectively."  Trial Transcript, Vol. 3 at 288-89.

Likewise, when Vallejo was questioned about the chemicals found in the defendants' possession, she testified that could produce 4023 grams of a substance.  "Q.  Okay.  Would that have been pure methamphetamine?  A.  Yes. Ma'am."  Trial Transcript, Vol. 6 at 909.

> Q.  Okay.  Now, let's talk about a 55-gallon drum of methylamime.  What would be the theoretical yield using a 55-gallon drum of methylamine?
>
> A.  If we were to use the theoretical yield, that means like a hundred percent conversion.
>
> Q.  Yes, ma'am.
>
> A.  That would be 279 kilograms.  But if you go with the actual, which would be like 50 percent, it would be 139.6 kilograms, and that would be like 307 pounds.
>
> Q.  Of a hundred percent pure methamphetamine?
>
> A.  That would be a hundred percent pure. . . .
>
> Trial Transcript, Vol. 6 at 910.

33

When viewed as a whole (and not taking isolated statements out of context), the record is clear that the evidence presented to the jury dealt with methamphetamine, not amphetamine, and there was no improper amendment of the indictment.

With respect to Smith, the trial court charged the jury that it could convict Smith on Counts 15-29 if it determined that Smith had used a communication facility "while in the process of committing or to facilitate the commission of the offense of the knowing and intentional manufacture of a controlled substance." The defendants contend that the trial judge constructively and improperly amended the indictment, since the indictment charged Smith with using a communication device "in committing and facilitating the commission of acts constituting a violation of Title 21 United States Code section 841."   This argument is foreclosed by United States v. Simpson, 228 F.3d 1294 (11th Cir. 2000).

In *Simpson*, the indictment charged that the defendant "did knowingly use and carry a firearm" in conjunction with a drug offense, but the statute required only a showing that the defendant "use[d] or carrie[d] a firearm."   The court upheld the defendant's conviction, stating:

> Because Simpson was indicted under the more strenuous use and carry standard, he could not possibly have been convicted on a ground that was not alleged in the indictment. Quite simply, the law is well established that where an indictment charges in the conjunctive several means of violating a statute, a conviction may be obtained on proof of only one of the means, and

34

accordingly the jury instruction may properly be framed in the disjunctive.

*Simpson,* 228 F.3d at 1300.

As in *Simpson,* the statute under which Smith was indicted, uses the disjunctive; therefore, it was entirely proper for the trial court to use the disjunctive in its charge, even though the indictment itself used the conjunctive.

More precisely on point is United States v. Cornillie, 92F.3d 1108 (11th Cir. 1996), wherein the court held that the district court had properly instructed the jury that the defendant could be found guilty if he had used force and violence *or* intimidation, tracking the language of the statute under which he had been charged, even though he had been accused in the indictment of having used force, violence, *and* intimidation.

The district court did not improperly amend the indictment in its charge to the jury.  Thus, counsel were not ineffective in raising this issue either at the trial court level or on appeal.

   8.  Ground Eight

Ground eight alleges that the trial judge "exhibited partiality towards the government and bias against the defendants and their theory of defense throughout the course of the trial. The totality of this conduct was so prejudicial that defendants were deprived of their right to a fair trial."  Although the defendants cite to various remarks made by the trial judge during the course of their trial, those remarks (and attendant rulings)

fall far short of the bias and prejudice needed to show that they did not receive a fair trial.

Generally, bias sufficient to disqualify a judge (or render a trial constitutionally unfair) "must stem from extrajudicial sources, and must be focused against a party to the proceedings." Hamm v. Members of the Board of Regents of the State of Floria, 708 F.2d 647, 651 (11th Cir. 1983). "An exception to that rule is made when a judge's remarks in a judicial context demonstrate such pervasive bias and prejudice that it constitutes bias against a party." *Id.* However, "[n]either a trial judge's comments on lack of evidence, rulings adverse to a party, nor friction between the court and counsel constitute pervasive bias." *Id.*

> The Supreme Court has specifically held:
>
> [J]udicial remarks · · · that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.
>
> Liteky v. United States, 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, (1994).

This court has reviewed the judicial remarks cited by the defendants and finds that they were simply his conclusions or reactions on points of law or fact and that even on those occasions when the judge's remarks exhibit impatience or frustration with counsel, his actions did not constitute the pervasive bias necessary to conclude that the defendants were denied a fair trial.

36

It necessarily follows that counsel were not ineffective in raising the issue of judicial bias on appeal.

B.   PROCEDURAL STATUS OF GROUNDS NINE, TEN, ELEVEN, AND TWELVE.

The Government first argues that four of the defendants' grounds for vacating their sentences are procedurally barred. Specifically, the Government argues that:   (1) Ground Nine - "Defendants Smith and Wade were not competent to stand trial and unable to adequately assist their trial counsel because of the inhumane conditions which existed, including inhumane conditions, which existed, including sleep deprivation, at the time of trial"; (2) Ground Ten - "The government withheld favorable and exculpatory evidence from defendants"; (3) Ground Eleven - "The cumulative effect of several errors prejudiced defendants right to a fair trial"; and (4) Ground Twelve - "The government made improper comments in closing argument, which deprived defendant[s] of a fair trial"[11] are procedurally barred.

In their consolidated reply to the government's response to their motion to vacate, the defendants withdrew Ground Nine. Furthermore, the defendants contend that Ground Ten is not procedurally barred because it was not previously available and Grounds Eleven and Twelve are not barred because they are also claims for ineffective assistance of counsel.

---

[11]   Though Culberson did not originally raise Ground Twelve in her initial addendum to section 2255 motion [Doc. No. 214], she filed a second addendum to vacate her sentence [Doc. No. 220], in which she incorporated Ground Twelve as well.

Because errors raised in section 2255 proceedings should address only constitutional deprivations, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.'" Burke v. United States, 152 F.3d 1329, 1331 (11th Cir. 1998) (quoting Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 471 (1962)). Thus, if a defendant seeks collateral review of a nonconstitutional error in a section 2255 proceeding without asserting that the nonconstitutional error constituted a complete miscarriage of justice, the court's inquiry ends there and it is not necessary to determine whether the defendant's claim is, in fact, procedurally barred.

However, if a defendant asserts a constitutional deprivation as a means to vacate his sentence, this court must then address whether the defendant was able to assert this error on direct appeal.   In general, a defendant must advance an available challenge to a conviction or sentence on direct appeal; otherwise, a court must consider the challenge procedurally barred in a section 2255 proceeding.   Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994).   "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development."   *Id.*   When an available challenge is not raised on direct appeal, it will be procedurally barred from

38

consideration in a section 2255 proceeding unless the defendant can establish cause for not previously asserting the challenge on direct appeal and actual prejudice resulting from the alleged error.  United States v. Frady, 456 U.S. 152, 167-68, 102 S.Ct. 1584, 1594 (1982).[12]

"Cause" for a procedural default, "ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with [a] procedural rule," or that his attorney's performance failed to meet the standard for ineffective assistance of counsel set forth in *Strickland.*  Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645 (1986).  To establish "actual prejudice," a defendant must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."   456 U.S. at 170, 102 S.Ct. at 1596. It is important to note that if a defendant is unable to establish

---

[12]   Specifically, in the case setting forth the cause and actual prejudice standard, the United States Supreme Court provided:

> Under this standard, to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) "cause" excusing his double procedural default, and (2) "actual prejudice" resulting from the errors of which he complains.

*Frady*, 456 U.S. at 167-68, 102 S.Ct. at 1594.

cause, it is unnecessary for the court to reach the issue of actual prejudice.  456 U.S. at 168, 102 S.Ct. at 1594.

"Alternatively, under the fundamental miscarriage of justice exception, 'in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.'" *Mills*, 36 F.3d at 1055 (quoting *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649).  Actual innocence, the Court in *Murray* went on to note, means factual innocence, not mere legal insufficiency, and that to succeed, a defendant must establish that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  477 U.S. at 496, 106 S.Ct. at 2649.

1.   Ground Ten

In Ground Ten, the defendants contend that the government withheld favorable evidence from them.  They contend that Ground Ten was unavailable to them at the time they appealed their convictions because they were unaware of the facts which support Ground Ten before receiving a letter dated January 15, 2004.  The letter referred to in this ground is the letter from Assistant Chief of Police Bill Shiflett to Wade; in that letter, Assistant Chief Shiflett talked about the conversation between Officer David Reeps and James Dickey, in which Dickey allegedly told Reeps that an Assistant United States Attorney had paid some jurors in order to obtain a guilty verdict.

Even if the court assumed that this ground was not procedurally defaulted, the ground would still not afford any relief to the defendants.  This court, together with the trial court, has gone into extensive detail about the absolute lack of credibility regarding this alleged bribing of jurors.  The alleged statement by Dickey was not the kind of evidence that *Brady* requires to be turned over to the defendants, especially in view of the fact that the underlying allegation itself was found by the trial court to be utterly without merit.

2.  Ground Eleven

The defendants contend that this is not a substantive claim, but rather, an ineffective assistance of counsel claim.  Ground Eleven is the defendants' claim that the cumulative nature of their counsel's performance at trial was so deficient that it deprived them of a fair trial.  This ground is both cumulative and improper because it is impossible for the court to determine whether no other counsel would have taken every single one of the actions defendants' counsel's took at trial and that but for the actions or inaction of their counsel, there is a reasonable probability that the jury would have a reasonable doubt as to the defendants' guilt.  In fact, by incorporating all previous allegations into Ground Eleven, the defendants are essentially raising the grounds of error which they have previously raised and this court has addressed in detail.  Because the court has found these grounds to be without

41

merit, it necessarily follows that their cumulative effect did not deprive the defendants of a fair trial.

Insofar as Ground Eleven attempts to contend that the cumulative nature of their counsel's errors constituted a fundamental miscarriage of justice, that argument also fails because the defendants have failed to establish that they are factually innocent of the charges lodged against them. Therefore, the defendants' reliance on Ground Eleven as a means to vacate their sentences is misplaced.

3.   Ground Twelve

In their original section 2255 motions, which were timely filed, the defendants contended, "The government made improper comments in closing argument, which deprived defendant[s] of a fair trial." The defendants further noted that they were in the process of securing a transcript of the government's closing argument and would provide additional facts in support of Ground Twelve after securing this transcript. Thereafter, on February 5, 2004, Smith and Wade filed their first amendment to their section 2255 motions which set forth additional facts in support of Ground Twelve. Specifically, these defendants contended the government acted improperly by: (1) commenting on their right to remain silent by arguing "to the jury in an implied manner that the defense had the opportunity to rebut the testimony produced by the government as to whether the chemicals at issue could be used for legitimate purposes, and that the defense failed to do so"; (2) telling the

42

jury that certain evidence central to their defense had been fabricated by the defendants on the eve of trial"; and (3) making statements which "vouched for the credibility of a key witness, David Gray, by stating th[at][the prosecutor] personally did not believe Gray had intentionally lied or omitted information in preparing the search warrant affidavit."   First Amendment to section 2255 motion, pp. 2-3.

Thus, the facts contained in Smith and Wade's addendums, which Ms. Culberson moved to incorporate, reiterated facts in support of their claim that the prosecutor acted improperly.   On February 27, 2004, the government filed its consolidated response in which it alleged, *inter alia*, that Ground Twelve was procedurally barred because the plaintiffs failed to establish cause as to why it was not raised on direct appeal.   Thereafter, in their May 13, 2004, reply, the defendants argued that Ground Twelve was not barred because it was an ineffective assistance counsel claim.

This was the first time the defendants shifted their focus from attacking the prosecutor's purported improper statements directly, to challenging their trial counsel's failure to object to these statements.   Essentially, the defendants were attempting to circumvent the procedurally barred status of Ground Twelve by attempting to re-phrase it as an ineffective assistance of counsel claim.   Since the defendants' grounds in support of their motion to vacate must have been brought within the one-year limitations period set forth in section 2255, the defendants' May 13, 2005,

43

reply in which it raised a new ground of error must be treated as an attempted amendment to the defendants' original timely-filed motions to vacate.   This is because a claim of prosecutorial misconduct is distinct from a claim of ineffective assistance of counsel.

It is clear that the defendants' amendment was filed outside of the one-year time period set forth in section 2255 because the defendants' petition for certiorari was denied on November 4, 2002, and their attempted amendment was not filed until May 13, 2004. When confronted with amendments to section 2255 motions filed outside section 2255's one-year limitations period, this court must analyze Federal Rule of Civil Procedure 15 to determine whether the defendants' claim raised in their amendment relates back to their original timely-filed section 2255 motion.   *Mayle v. Felix*, ___ U.S. ___, 125 S.Ct. 2562 (2005).

Federal Rule of Civil Procedure 15(a) provides that a pleading may be amended once as a matter of right before a responsive pleading has been served.   If a responsive pleading has been filed, however, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party."   In *Mayle*, the United Supreme Court noted, "The 'original pleading' to which Rule 15 refers is the complaint in an ordinary civil case, and the petition in a habeas proceeding."   ___ U.S. at ___, 125 S.Ct. at 2569-70.   Thus, the petitioner may file an amendment as a matter of right before the court directs the government to respond to the

44

motion to vacate. *See* Rule 15(a); section 2255. If this amendment is filed within section 2255's one-year limitations period there is no problem, however, if it is filed outside of that period the court must determine whether it relates back under Rule 15(c)(2), as interpreted by *Mayle*.

Once the government responds, however, the petitioner may amend his pleading only with leave of the court or the consent of the government. Rule 15(a). Thus, Rule 15(a), arms the district court with the right to refuse amendments when justice so requires. In the case at bar, the defendants' attempted amendment of Ground Twelve, which is contained in their reply, was filed after the government responded to their petition. Therefore, without the government's consent, it is up to this court to determine whether leave to amend shall be granted. This court concludes that leave to amend will not be given in this case because it is evident that once the defendants realized their claims of prosecutorial misconduct were procedurally barred they attempted to switch gears, and claims, by arguing that they really meant to argue that their counsel were ineffective in failing to object to the prosecutor's allegedly unconstitutional statements. Congress altered section 2255 and imposed a one-year limitations period to "advance the finality of criminal convictions." *Mayle*, ___ U.S. at ___, 125 S.Ct. at 2573.

If this court were to continually allow the defendants to amend their pleadings to usurp the procedurally barred status of

45

their claims that were not raised on direct appeal, nor properly raised on collateral appeal, this court would be working at cross purposes with congressional.   Furthermore, this court would be condoning procedural fencing.   This court is confident that the defendants, although proceeding pro se, understand the difference between ineffective assistance of counsel claims and claims of prosecutorial misconduct, as evidenced in the eight ineffective assistance of counsel claims raised above; the court, therefore, refuses to allow amendment of Ground Twelve.   Because the defendants have failed to establish cause as to why this claim was not raised on direct appeal, Ground Twelve is procedurally barred.

### III. SUMMARY

For all the foregoing reasons, the defendants' motions to vacate their sentences [Doc. Nos. 214, 216, 218, and 220]; the defendants' motions for leave to engage in discovery [Doc. Nos. 222, 223, and 226] are DENIED; Culberson's motions for leave to adopt the motions, legal memoranda, and affidavits filed by Ricky L. Wade and Rodney Smith [Doc. Nos.  234 and 245] are GRANTED; Smith and Wade's motion for a 10-day extension to file their reply to the government's answer and motion to dismiss their section 2255 motions [Doc. No. 235] is GRANTED; the defendants' motion for a continuance pursuant to Rule 56(f), Federal Rules of Civil Procedure [Doc. No.  237] is DENIED; the defendants' motion to exceed the page limitations imposed by the local rules of this

court [Doc. No. 238] is GRANTED; to the extent that the defendants seek to amend their section 2255 motions to add a claim for relief under *Blakely* or *Booker* [*see* Doc. No. 244] such request is DENIED, since those cases are not applicable to cases on collateral review.

SO ORDERED, this 5TH day of September, 2006.

Robert L. Vining, Jr.

ROBERT L. VINING, JR.
Senior United States District Judge